**Cleared for Public Filing 5/2/2007**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TARIQ ALI ABDULLA MOHAMMED** ) | |
| **BA ODAH,** *et al.*, ) | |
| ) | |
| **Petitioners,** ) | |
| ) | |
| **v.** ) | **06-CV-1668 (HHK)** |
| ) | |
| **GEORGE W. BUSH, President of the** ) | |
| **United States,** *et al.*, ) | **ORAL ARGUMENT REQUESTED** |
| ) | |
| **Respondents.** ) | |
| ) | |

## PETITIONERS' OPPOSITION TO RESPONDENTS' MOTION TO DISMISS AND MOTION FOR STAY-AND-ABEY ORDER AND/OR TRANSFER

## TABLE OF CONTENTS

Page

**INTRODUCTION** ................................................................................................ 1

**ARGUMENT** ...................................................................................................... 4

I.   ***Boumediene* Is Not Final Or Binding Because The Denial Of Certiorari Was Based In Part On The Failure To Exhaust Remedies, Which Are Still Available To Those Petitioners And Are Being Actively Pursued By These Petitioners** ............................................................................................... 4

    A.   **Justices Stevens and Kennedy and the Court of Appeals Have Adopted The Exhaustion Of Remedies Model For Habeas Relief** ................ 5

    B.   **The Supreme Court Has Not Decided Any Questions Regarding The Jurisdiction Of This Court Or The Rights That Can Be Enforced Through Habeas Corpus Proceedings** ................................................. 6

    C.   **Because the DTA Remedies May Be Determined to Be Inadequate, This Court Should Remain Available For Any Post-DTA Exhaustion Litigation** ................................................................................... 7

II.  **The Court Has Discretion To Issue A Stay-and-Abey Order, And The Leading Case Mandates That It Would Be an Abuse of Discretion Not To Enter A Stay In This Case** ..................................................................... 8

    A.   **The District Court Has Discretion to Enter a Stay** ............................. 9

    B.   ***Rhines* Provides That It Would Be An Abuse of Discretion For This Court Not To Issue An Order To Stay-and-Abey** .......................... 10

III. ***United Mine Workers* Provides That The Court Has Authority To Preserve The Status Quo While Jurisdictional Questions Are Litigated** ................. 12

IV.  **This Court Has Jurisdiction to Determine Its Own Jurisdiction and Respondents' Reliance on *Steel Co.* Is Misplaced** ...................................... 13

V.   **In the Event That This Court Determines It Lacks Jurisdiction, Petitioners' Cases Should Be Transferred To The Court Of Appeals Pursuant To 28 U.S.C. 1631** ....................................................................................... 14

**CONCLUSION** ................................................................................................ 15

# TABLE OF AUTHORITIES

## CASES

Boumediene v. Bush, 127 S. Ct. 1478 (2007) ...................2, 3, 4, 5, 6, 7, 8, 11, 14, n.3, 15

Boumediene v. Bush, 476 F.3d 981 (D.C. Cir. 2007)....1, 2, 3, 4, 5, 6, 7, 8, n. 3, 11, 14, 15

Ex parte Hawk, 321 U.S. 114 (1944)..........................................................................5, 6

Ex parte Milligan, 71 U.S. 2 (1866)............................................................................13

In re President and Directors of Georgetown College, 331 F.2d 1000 (D.C.
        Cir. 1964) ............................................................................................................12

Marino v. Ragen, 332 U.S. 561 (1947).........................................................................8

Oneida Indian Nation v. County of Oneida, 414 U.S. 661 (1974) ....................................14

Padilla v. Hanft, 547 U.S. 1062 (Kennedy, J., concurring in the denial of
        certiorari).............................................................................................................5

Rhines v. Weber, 544 U.S. 269 (2005)........................................................3, 9, 10, 11, 12

Rose v. Lundy, 455 U.S. 509 (1982) .............................................................................9

Steel Co. v. Citizens for a Better Environment, 523 U.S. 83 (1998)......................3, 13, 14

Texas v. Cobb, 532 U.S. 162 (2001)............................................................................6

United States v. Booker, 543 U.S. 220 (2005) ...............................................................6

United States v. DeFries, 129 F.3d 1293 (D.C. Cir. 1997)..............................................n. 3

United States v. United Mine Workers, 330 U.S. 258 (1947) ...................................12, n. 4

## STATUTES

Detainee Treatment Act of 2005 ("DTA"), Pub. L.
        No. 109-148, 119 Stat. 2680 (2005) ..............1, 2, 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15

28 U.S.C.1631....................................................................................................1, 4, 15

28 U.S.C. § 2254.....................................................................................................9

Military Commissions Act of 2006 ("MCA"), Pub. L. No. 109-366, 120 Stat. 2600 (2006)………………………………………………………1, 2, 6, 10, 13, 15

# INTRODUCTION

Petitioners Tariq Ali Abdulla Mohammed Ba Odah[1] and Mohammed Abdulla Mohammed Ba Odah,[2] through their attorneys, in response to Respondents' April 19, 2007 Motion to Dismiss, respectfully request that this Court (i) deny Respondents' Motion to Dismiss their habeas actions, and (ii) stay the Petition, holding it in abeyance pending Petitioners' exhaustion of their remedies in the Court of Appeals under the Detainee Treatment Act of 2005 ("DTA"), Pub. L. No. 109-148, 119 Stat. 2680 (2005), and the decision of the Supreme Court in response to a renewed petition for certiorari to review the Court of Appeals' jurisdictional holding in *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), and/or the Supreme Court's determination of the constitutionality of the MCA in the pending appeal in *In re Ali*, No. 06-1194, or (iii) in the event that it determines it lacks jurisdiction over the action, transfer this habeas action to the Court of Appeals pursuant to 28 U.S.C. § 1631 for consolidation with Petitioners' DTA petitions (to be filed shortly).

Petitioners ask for no more than that the Court preserve the status quo by staying the Petitioners' habeas claims.  Unlike some other habeas petitioners, Petitioners in this case do not have the benefit of a Protective Order or other orders that might require Court supervision. Petitioners ask simply that their existing habeas rights be preserved so that once they have exhausted their DTA review and once any issues of the constitutionality of the MCA have been finally resolved by the Supreme Court, then – if it is still appropriate – they can resume litigating the merits of their habeas petition.

---

[1]    The Respondents refer to the Petitioner in their Motion to Dismiss as Tareq Ali Abdullah Ahmed Baada (ISN 178).

[2]    The Respondents do not list a Petitioner by this name in their Motion to Dismiss.  However, counsel have had conversations with his Next Friend as recently as last week in which his Next Friend confirms that he is receiving mail from the Petitioner from Guantánamo.  It is hoped that Respondents will provide further information on this in the course of the imminent DTA proceeding.

Respondents, on the other hand, have filed a Motion to Dismiss this Petition (and every other pending habeas petition brought by Guantanamo detainees) for a purported lack of jurisdiction. Respondents premise their Motion on the D.C. Circuit Court of Appeals' 2-1 decision in the *Boumediene* case upholding the application of the habeas-stripping provision in the MCA on the basis that Petitioners must exhaust their DTA remedies and have been falsely emboldened by the Supreme Court's denial of a certiorari petition (despite an explicit caveat that a majority are disposed to revisit the issue once the DTA review is exhausted). For the reasons set out below, this is based on a misconceived view of the state of the law in this Circuit, flies in the face of the Supreme Court Justices' warning that they would invite further review if the DTA procedures prove unsatisfactory and constitutes an unwarranted attempt to curtail the powers of this Court to manage its docket.

Fundamentally, Respondents' reliance on *Boumediene* is misplaced in that they fail to recognize that the constitutionality of the Military Commissions Act of 2006 ("MCA"), Pub. L. No. 109-366, 120 Stat. 2600 (2006), is still in dispute and being actively litigated. In the Supreme Court's denial of certiorari in *Boumediene*, 127 S. Ct. 1478 (2007), three Justices state in the dissent that the habeas-stripping provision of the MCA is a "significant [question]…warranting…review." *Id.* at 1480. Two further Justices opine that they could not review the issue "at this time" because Petitioners had failed to exhaust alternative remedies. In other words, five Justices have signaled a willingness to decide the jurisdiction issues raised in *Boumediene* once the alternative DTA remedies have been exhausted. At the direction of the appellate courts, the *Boumediene* petitioners and Petitioners in this case are actively prosecuting their DTA claims. It makes no sense to dismiss this Petition in the meantime. Indeed, the *Boumediene* petitioners have asked the Court of Appeals to stay the issuance of its mandate

pending the completion of DTA proceedings and the filing of a renewed petition for certiorari. Respondents' motion is inappropriately premature as long as these issues are outstanding.

Further, while this Court is not bound by *Boumediene*, it is bound by *Rhines v. Weber*, 544 U.S. 269 (2005).   In that case, the Supreme Court held that in habeas actions where alternative remedies exist, and where there is a danger of dismissal of the underlying habeas action by statute while those remedies are being exhausted, the trial court would be abusing its discretion were it not to stay the action pending exhaustion of said remedies, provided there is good cause, potentially meritorious claims, and the absence of unreasonable delay.   Unable to meaningfully distinguish *Rhines*, Respondents instead rely on a case (*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)) that supports dismissal on jurisdictional grounds where the underlying claim is frivolous.   Far from being frivolous, it is difficult to imagine claims that raise more serious and weighty issues than these.   *Boumediene v. Bush*, 127 S.Ct. 1478, 1478 (2007) (noting "the obvious importance of the issues raised in these cases") (Stevens & Kennedy, JJ., concurring in denial of certiorari), *denying cert. to*, 476 F.3d 918 (D.C. Cir. 2007); *id.* at 1480 (finding that "the questions presented are significant ones") (Breyer, J., dissenting).   Indeed, two Justices in *Boumediene* explicitly warned that should Respondents take steps to prejudice the position of Petitioners to seek review in federal court, then it was incumbent on the courts to "act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised."   *Id.* at 1478. Accordingly, this Court should dismiss the opposition and preserve the status quo by entering the requested stay.

In the alternative, should this Court determine that it does not have jurisdiction, Petitioners request that the underlying motion be transferred to the Court of Appeals pursuant to 28 U.S.C. § 1631, for consolidation with their DTA petitions.   Petitioners advise that they are

currently drafting petitions to be filed in the Court of Appeals on behalf of each of the petitioners pursuant to § 1005(e)(2)(A) of the DTA.  It is expected that those petitions will be filed  very shortly and they will be prosecuted expeditiously.


## ARGUMENT


**I.** ***Boumediene* Is Not Final Or Binding Because The Denial Of Certiorari Was Based In Part On The Failure To Exhaust Remedies, Which Are Still Available To Those Petitioners And Are Being Actively Pursued By These Petitioners**

On February 20, 2007, a split panel of the D.C. Circuit Court of Appeals decided combined cases involving non-U.S. nationals detained at Guantánamo, finding that post-*Rasul* statutes deprived federal courts of jurisdiction.  *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007). Because the petitioners in that case had declined to exercise their rights to review under § 1005(e)(2)(A) of the DTA, the Court found that the "only recourse" was to vacate the District Court decision and dismiss the case for lack of jurisdiction.  *Boumediene*, 476 F.3d at 994. The petitioners then petitioned for a writ of certiorari and, on April 2, 2007, the Supreme Court denied certiorari, with both a three-Justice dissent (in which the Justices would have granted certiorari) and an additional statement from Justices Stevens and Kennedy commenting on their denial of certiorari.  *See Boumediene v. Bush*, 127 S.Ct. 1478 (2007).

Justices Stevens and Kennedy concluded that, given "our practice of requiring the exhaustion of available remedies as a precondition to accepting jurisdiction over applications for the writ of habeas corpus," denial of certiorari was appropriate "*at this time*" (emphasis added).  *Id.* at 1478.  The Justices specifically expressed concern regarding maintenance of the *status quo* during the litigation: "Were the Government to take additional steps to prejudice the position of petitioners in seeking review in this court, 'courts of competent jurisdiction,' including this

Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'" *Id.* (quoting *Padilla v. Hanft*, 547 U.S. 1062 (Kennedy, J., concurring in denial of certiorari)).  It therefore appears that five Justices will give serious consideration to a renewed petition for certiorari in *Boumediene*, following exhaustion of those petitioners' DTA remedies.  In other words, a majority of the Supreme Court has left open the possibility that the Court of Appeals' holding may be erroneous and that it could within the near future be the subject of appellate review.  Accordingly, the Respondents' reliance on *Boumediene* is misplaced for several reasons.

### A.     Justices Stevens and Kennedy and the Court of Appeals Have Adopted The Exhaustion Of Remedies Model For Habeas Relief

*Boumediene* does not control these cases because, unlike the petitioners in that case at the time it was before the Court of Appeals, Petitioners here are exhausting their remedies under the DTA.  The Court of Appeals in *Boumediene* expressly predicated its dismissal on the petitioners' failure to utilize available remedies under the DTA.  *Boumediene*, 476 F.3d at 994 (in finding that "the record does not have sufficient information to perform the review the DTA allows," concluding the court's "only recourse is to vacate the district court's decisions and dismiss the cases for lack of jurisdiction").  As set out above, Justices Stevens and Kennedy explicitly explained that "[d]espite the obvious importance of the issues," the Court was denying certiorari "at this time" in light of the Court's practice of requiring exhaustion of available remedies as a precondition to accepting jurisdiction." *Boumediene,* 127 S.Ct. at 1478 (*citing Ex parte Hawk*, 321 U.S. 114 (1944) (per curiam)).

The citation to *Ex parte Hawk* is instructive.  In that case, the petitioner filed for federal habeas corpus relief under circumstances, as in the present case, in which the effectiveness of state remedies had not been established.  The Supreme Court not only applied the exhaustion rule

but held that the adequacy of the available remedy should be decided in the first instance by "the federal district court":

> Where the state courts have considered and adjudicated the merits of his contentions, and this Court has either reviewed or declined to review the state court's decision, a federal court will not ordinarily reexamine upon writ of habeas corpus the questions thus adjudicated.....But where resort to state court remedies has failed to afford a full and fair adjudication of the federal contentions raised, either because the state affords no remedy.....or because in the particular case the remedy afforded by state law proves in practice unavailable or seriously inadequate...., a federal court should entertain his petition for habeas corpus, else he would be remediless.  In such a case he should proceed in the federal district court before resorting to this Court by petition for habeas corpus.

321 U.S. at 118 (citations omitted).  The exhaustion model anticipates that the ultimate questions regarding jurisdiction, which may depend in large part on the efficacy of the DTA remedy, will first be considered and decided in the District Court.  The ultimate issues would then be preserved for appellate review, if necessary.

Until that option has been exhausted, *Boumediene* should be treated as it is – the first in a series of many decisions involving distinct allegations and legal theories that may be taken into consideration, but are not binding upon any of the district courts.  *See Texas v. Cobb*, 532 U.S. 162, 169 (2001) ("Constitutional rights are not defined by inferences from opinions which did not address the question at issue."); *see also United States v. Booker*, 543 U.S. 220, 239-242 (2005) (limiting *stare decisis* effect of cases where constitutional issue was not raised or resolved).

**B.    The Supreme Court Has Not Decided Any Questions Regarding The Jurisdiction Of This Court Or The Rights That Can Be Enforced Through Habeas Corpus Proceedings**

Respondents are wrong to assert that, based on *Boumediene*, the law of the Circuit is settled.  While the Court of Appeals' decision in that case is based on its interpretation of the MCA, the constitutionality of the MCA itself is still in dispute.  Despite Justices Stevens' and

Kennedy's explicit and pointed admonition, Respondents ignore the fact that "as always, denial of certiorari does not constitute an expression of any opinion on the merits." *Boumediene*, 127 S.Ct. at 1478. As the three dissenting Justices opined, and as did Judge Rogers in her dissent in the Court of Appeals, the constitutional ramifications of a statute that purports to disenfranchise petitioners in existing habeas corpus petitions are profound and of obvious importance. As such, this Petition should be fully considered, after exhaustion, upon each Petitioners' unique facts and legal arguments. The *Boumediene* case does not finally resolve the jurisdictional questions that impact on each of the Petitioners included within this Petition.[3]

**C.    Because the DTA Remedies May Be Determined to Be Inadequate, This Court Should Remain Available For Any Post-DTA Exhaustion Litigation**

Questions regarding the suspension and elimination of the writ of habeas corpus require consideration of whether alternative remedies provide protection coextensive with the Great Writ. *See I.N.S. v. St. Cyr*, 533 U.S. 289, 305 (finding that "a serious Suspension Clause issue would be presented if we were to accept the INS's submission that the 1996 statutes have withdrawn [habeas] power from federal judges and provide to adequate substitute for its exercise"); *Blair-Bey v. Quick*, 151 F.3d 1036, 1042 (D.C. Cir. 1998) ("explain[ing] that 'the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality

---

[3]    Indeed, the *Boumediene* case does not even finally decide the questions for the *Boumediene* petitioners, given that the mandate has not issued and the cases are still subject to motions and briefing. The law of this Circuit is that "[t]he filing of a notice of appeal, including an interlocutory appeal, 'confers jurisdiction on the court of appeal and divests the district court of control over those aspects of the case involved in the appeal.'" *United States v. DeFries*, 129 F.3d 1293, 1302 (D.C. Cir. 1997) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). The *Boumediene* petitioners have asked the Court of Appeals to stay the issuance of the mandate pending completion of DTA proceedings and the filing of a renewed petition for certiorari to review the Court of Appeals' jurisdictional ruling. Until that issue is resolved, this court must stay the petition because the "district court does not regain jurisdiction over those issues until the court of appeals issues its mandate." *De Fries*, 129 F.3d at 1302.

of a person's detention does not constitute a suspension of the writ of habeas corpus") (quoting *Swain v. Pressley*, 430 U.S. 372, 381 (1977)).

Indeed, in requiring the *Boumediene* petitioners to exhaust their DTA remedies, Justices Stevens and Kennedy, with citation to *Marino v. Ragen*, 332 U.S. 561 (1947), provided the caveat that the Supreme Court has "frequently recognized that the policy underlying the exhaustion-of-remedies doctrine does not require the exhaustion of *inadequate* remedies." *Boumediene*, 127 S.Ct. at 1478 (emphasis added)  It is therefore anticipated that the courts might become involved in determining issues of "adequacy" based on the particular facts associated with a petitioner and, if such remedy is determined to be inadequate, may be asked to respond to the merits of that petitioner's habeas claim.  As such, it is imperative that access to this court remains available.  Indeed, Justices Stevens and Kennedy went so far as to warn that while petitioners are pursuing the DTA review, in the interim, the Respondents should take no additional steps "to prejudice the position of petitioners in seeking review *in this Court*."  *Id.* (emphasis added).  By entering the stay requested and maintaining the present case in the District Court, the Court can best remain in a position to "act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised."  *Id.*  In other words, the exhaustion model from the *Boumediene* litigation requires that the District Court proceeding remain in place for potential post-exhaustion litigation.

## II.     The Court Has Discretion To Issue A Stay-and-Abey Order, And The Leading Case Mandates That It Would Be an Abuse of Discretion Not To Enter A Stay In This Case

The stay requested by Petitioners is consistent with Supreme Court directives in the analogous situation of a federal court presented with unexhausted habeas claims under 28 U.S.C.

§ 2254. In *Rhines v. Weber*, the Supreme Court explicitly approved the stay-and-abey procedure requested by Petitioners in the context of federal habeas corpus proceedings. *Rhines*, 544 U.S. 269. The Court held that district courts have the discretion to issue stay-and-abey orders in lieu of dismissal where alternative remedies have yet to be explored in certain habeas actions. Moreover, where there is (i) just cause, (ii) no intent to delay on the part of the petitioners, and (iii) a likelihood of success, it would be an abuse of discretion for the court not to issue a stay-and-abey order. *Id.* at 278.

### A. The District Court Has Discretion to Enter a Stay

In *Rhines*, the prisoner filed in federal court a mixed habeas petition, *i.e.*, one containing both claims exhausted through the state court system and unexhausted claims. The Court recited its precedent in *Rose v. Lundy*, 455 U.S. 509 (1982), in which it imposed a requirement of "total exhaustion" with respect to mixed petitions and, on that basis, directed the federal courts to dismiss mixed petitions without prejudice and instructed affected petitioners to present their unresolved claims in state court. *Id.* at 522.

Yet the *Rhines* Court observed that, at the time of *Lundy*, there was no statute of limitations on the filing of federal habeas corpus petitions, which meant that petitioners could return to federal court following exhaustion of their state claims "with relative ease." *Rhines*, 544 U.S. at 274. Congress' enactment of a limitations period for federal habeas petitions after the *Lundy* decision meant that the petitioner's federal habeas claim could become procedurally barred, as the petitioner pursued unexhausted state claims following a dismissal without prejudice by federal court. Recognizing that problem, the *Rhines* Court allowed for district courts to issue stay-and-abey orders at their discretion.

As discussed above, this case and other habeas actions by Guantánamo prisoners now pending in this Court face a real prospect that the Supreme Court will provide a final

determination of the federal courts' jurisdiction.  Petitioners' right to proceed by seeking a writ of habeas corpus, to the extent the Supreme Court may decide that right exists, could be impaired if this Court were to dismiss their Petition now.  In this way, the situation is comparable to *Rhines*, where it was possible (yet not certain) that an otherwise valid federal habeas claim could be barred as a result of pursuing unexhausted claims in another forum.

    **B.**    ***Rhines* Provides That It Would Be An Abuse of Discretion For This Court Not To Issue An Order To Stay-and-Abey**

The *Rhines* Court held that "it would likely be an abuse of discretion for a district court to deny a stay" if three requirements were met – "the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics."  *Rhines*, 544 U.S. at 278.  Petitioners in the present case satisfy all three preconditions under which failure to stay-and-abey would constitute an abuse of discretion.

First, there is good cause for the failure to exhaust.  Petitioners were unaware that their habeas rights were in jeopardy such that a DTA claim would be appropriate.  The Petition was filed on September 28, 2006, after the DTA was enacted but before the MCA came into force.  At that time and until very recently, the legal landscape was very opaque due to the  questions left open in the Supreme Court's decision in *Rasul v. Bush* (which established a right to proceed under § 2241 at the time the Petition was commenced) and the subsequent uncertainties surrounding the effect of the DTA and MCA.  The Court of Appeals required several rounds of briefing over two years before it could issue its decision in *Boumediene* in February 2007.  Petitioners thus had excellent reasons for not initiating the DTA procedures until being directed to do so as a consequence of the denial of certiorari in *Boumediene*.

Second, Petitioners have done nothing to deliberately delay this case. On the contrary, counsel filed the Petition soon after traveling to Yemen to obtain the necessary Next Friend authorizations. In the relatively short time since the Petition was filed, counsel have been trying to answer such basic factual questions as whether Petitioner Mohammed Ba Odah is even at Guantánamo. In light of this, Petitioners cannot be blamed for any delays.

Third, the claims raised both in this Court and in the DTA petition are potentially meritorious. Counsel seek additional factual discovery regarding the circumstances under which the Petitioners were detained and the basis for their determination as "enemy combatants." Even on the limited information available in the absence of a Protective Order, there are serious questions raised about the circumstances in which statements attributed to the Petitioners were made and whether the Petitioners were given an opportunity to bring exculpatory evidence, potentially in violation of the Department of Defense's own standards and procedures as well as the laws and Constitution of the United States. Nor have Respondents provided any independent evidence suggesting that any of the Petitioners were engaged in or supporting hostile actions against the United States and its coalition allies between September 11, 2001 and the time of their capture such that they might be properly determined to be enemy combatants.

Respondents attempt to minimize the significance of *Rhines* by stating that the Guantánamo habeas cases, unlike *Rhines*, do not involve "any temporal bar to a habeas petition," and the "authority of a court to enter a stay is constrained by statute." Motion to Dismiss at 7. However, Respondents fail to note that the constitutionality of the operative statute in *Rhines* (the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")) was not being actively litigated as part of the habeas petition, as is the statute here. Further, the procedural obstacles that dismissal would create in this case are closely analogous to the situation in *Rhines*.

Accordingly, not only is a stay-and-abey order within this Court's discretion, but given the good cause for delay, absence of dilatory tactics, and potentially meritorious claims, it would be an abuse of that discretion not to issue the relief requested.

## III.   *United Mine Workers* **Provides That The Court Has Authority To Preserve The Status Quo While Jurisdictional Questions Are Litigated**

There is a long-established principle that, where the question of jurisdiction is still being settled, the courts have "authority from the necessity of the case to make orders to preserve the existing conditions and subject of the petition." *United Mine Workers*, 330 U.S. at 291 (quoting *United States v. Shipp*, 203 U.S. 563, 573 (1906) (Holmes, J.)).  This Court has not hesitated to apply these principles:

> Of course, whether or not there was jurisdiction to decide the merits, until the question of jurisdiction is determined, there was "authority from the necessity of the case to make orders to preserve the existing conditions and the subject of the petition . . . ." . . . Clearly there was "power to preserve existing conditions while . . . determining [the] authority to grant injunctive relief."

*In re President and Directors of Georgetown College*, 331 F.2d 1000, 1005 (D.C. Cir. 1964) (quoting *United Mine Workers*).  This Court should carefully protect the status quo by entering the stay to assure that Petitioners are not prejudiced in their ability to litigate the DTA action and to preserve potential remedies in this Court and on appeal.

At present, there are fundamental legal questions that remain unresolved and that go to the heart of the jurisdiction issue.  These issues include: the adequacy of the DTA remedy; whether the writ has been unconstitutionally suspended or eliminated, if the DTA remedy proves inadequate; and the applicability of the DTA and MCA to detainees picked-up other than on the battlefield.  The Respondents' motion to dismiss should be denied because only once those questions are resolved will this Court (or an appellate court) be in a position to decide whether it

has jurisdiction over Petitioners' habeas claims. Further, if this Court eventually reaches the jurisdictional and constitutional questions, and rules adversely to the Petitioner, there must be an adequate record for appellate review, which requires that the petition in this Court remain in place until after the Petitioner has exhausted the DTA procedures.

**IV.     This Court Has Jurisdiction to Determine Its Own Jurisdiction and Respondents' Reliance on *Steel Co.* Is Misplaced**

It has long been held that courts have jurisdiction to determine their own jurisdiction. *See, e.g., Ex parte Milligan*, 71 U.S. 2 (1866) (where Court made its own determination of jurisdictional issues involved in petitioner's particular case). Respondents attempt to undermine this basic principle by relying on *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998), for the unremarkable proposition that jurisdiction is a threshold question. However, Respondents ignore the preceding language in *Steel Co.* that in fact supports this Court's jurisdiction.

The Court in *Steel Co.* restates the fundamental maxim that "the district court has jurisdiction if 'the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another'...unless the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'" 523 U.S. at 90 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83, 685 (1946)). Only when the Supreme Court has made an adverse ruling on the merits is dismissal for want of subject matter jurisdiction appropriate: "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, *foreclosed by prior decisions of this Court*, or otherwise completely devoid of merit as not to

involve a federal controversy."  *Id.* at 90 (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974) (emphasis added)).

The *Boumediene* denial of certiorari is unequivocally *not* a ruling on the merits that would "foreclose" there being a justiciable controversy.  Indeed, for the reasons already discussed, it appears that a majority of the Supreme Court have indicated their willingness to take up the jurisdictional issue once the DTA remedies have been exhausted.  Nor can the Respondent characterize the litigation as "wholly insubstantial and frivolous."  The courts have been split on the jurisdictional issues at each level of the litigation: the District Courts reached conflicting decisions in the first instance (*Al Odah* as opposed to *Boumediene/Khalid*), leading to the two-to-one *Boumediene* opinion, resulting in the three-way fracture in the *Boumediene* denial of certiorari by the Supreme Court.  Accordingly, *Steel Co.* does not support Respondents' Motion to Dismiss and instead reinforces the Court's power to stay the Petition pending final determination of the jurisdictional controversy.[4]

## V.    In the Event That This Court Determines It Lacks Jurisdiction, Petitioners' Cases Should Be Transferred To The Court Of Appeals Pursuant To 28 U.S.C. 1631

If the Court nevertheless finds that it lacks jurisdiction to hear this case and declines to enter a stay, it should transfer the habeas action to the Court of Appeals for consolidation with Petitioners' imminent DTA petitions.  The transfer statute provides in relevant part:

> Whenever a civil action is filed in a court … or appeal … is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it

---

[4]  Ironically, the Respondents' own Motion recognizes that the Court's continuing jurisdiction while the merits are exhausted, litigated, and appealed.  In footnote 15, the Respondents point out that the Protective Order should survive dismissal, citing the case upon which the Petitioners rely – *United States v. United Mine Workers*, 330 U.S. 258 (1947) (Motion at 8-9).

is transferred on the date upon which it was actually filed in or noticed for the court from which it was transferred.

28 U.S.C. § 1631.

It is in the interest of justice for this Court to preserve the *status quo* by transferring the action, where the Court of Appeals has jurisdiction over the same general subject matter and must ultimately consider, for example, the same or similar issues of client access and discovery that have been extensively briefed in the District Court. Transfer to the Court of Appeals will also keep alive whatever rights Petitioners may have as a consequence of having filed their habeas Petition prior to the enactment of the purported habeas-stripping provisions in the MCA.

## CONCLUSION

For the foregoing reasons, this Court should deny Respondents' Motion to Dismiss and enter an order preserving the status quo by staying the Petition, holding it in abeyance pending Petitioners' exhaustion of their remedies in the Court of Appeals under the DTA and the decision of the Supreme Court in response to a renewed petition for certiorari to review the Court of Appeals' jurisdictional holding in *Boumediene v. Bush*, and/or the Supreme Court's determination of the constitutionality of the MCA in the pending appeal in *In re Ali*. Should the Court find it has no jurisdiction, the Petition should be transferred to the Court of Appeals for consolidation with each Petitioner's DTA proceeding.

Dated:  May 3, 2007

New York, New York                              Respectfully submitted,

                                                CLIFFORD CHANCE US LLP

By:_____/s/_____

    Julia Symon (Bar No. 456828)
    Matthew Babcock
    2001 K Street NW
    Washington, DC  20006
    Tel:      (202) 912-5000
    Fax:     (202) 912-6000
    e-mail:  julia.symon@cliffordchance.com

    James M. Hosking
    Hissan Bajwa
    31 West 52nd Street
    New York, NY 10019
    Tel:      (212) 878-8000
    Fax:     (212) 878-8375
    e-mail:  james.hosking@cliffordchance.com

    *Counsel for Petitioners*

    Gitanjali S. Gutierrez
    CENTER FOR CONSTITUTIONAL RIGHTS
    666 Broadway, 7th Floor
    New York, New York 10012
    Tel: (212) 614-6439
    Fax: (212) 614-6499

    *Of Counsel*

16

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | ) | |
| **TARIQ ALI ABDULLA MOHAMMED** | ) | |
| **BA ODAH,** *et al.***,** | ) | |
|  | ) | |
| **Petitioners,** | ) | |
|  | ) | |
| **v.** | ) | **06-CV-1668 (HHK)** |
|  | ) | |
| **GEORGE W. BUSH, President of the** | ) | |
| **United States,** *et al.***,** | ) | |
|  | ) | |
| **Respondents.** | ) | |
| _____ | ) | |

## (PROPOSED) ORDER

Upon consideration of Petitioners' Opposition to Respondents' Motion to Dismiss, it is ORDERED that (1) the Respondents' Motion to Dismiss the habeas actions of Petitioners Tariq Ali Abdulla Mohammed Ba Odah and Mohammed Abdulla Mohammed Ba Odah, be denied; and (2) the above-captioned case be stayed and held in abeyance pending Petitioners' exhaustion of their remedies in the Court of Appeals under the Detainee Treatment Act of 2005 and the decision of the Supreme Court in response to a renewed petition for certiorari to review the Court of Appeals' jurisdictional holding in *Boumediene v. Bush*, and/or the Supreme Court's determination of the constitutionality of the MCA in the pending appeal in *In re Ali*.

IT IS SO ORDERED.

DATED:

_____

United States District Judge

Henry H. Kennedy